UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| ALLEN ISOM, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action Number |
| ) | 2:15-cv-02170-AKK |
| BIRMINGHAM WATER WORKS ) | |
| BOARD, ) | |
| ) | |
| Defendant. ) | |

# MEMORANDUM OPINION AND ORDER

Allen Isom alleges claims of race discrimination under Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981, and Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* (Count I), and violations of the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* (Count II), against his former employer. The court presently has for consideration the Birmingham Water Works Board's motion for summary judgment, doc. 20, which is fully briefed, docs. 20-1; 28-1; 31, and ripe for review. For the reasons stated herein, the motion is due to be granted as to Count I, and denied as to Count II.

## I.   STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(a), summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "Rule 56(c) mandates the

entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (alteration in original). The moving party bears the initial burden of proving the absence of a genuine dispute of material fact. *Id.* at 323. The burden then shifts to the non-moving party, who is required to go "beyond the pleadings" to establish that there is a "genuine issue for trial." *Id.* at 324 (internal citations and quotation marks omitted). A dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The court must construe the evidence and all reasonable inferences arising from it in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *see also Anderson*, 477 U.S. at 244 (all justifiable inferences must be drawn in the non-moving party's favor). Any factual dispute will be resolved in the non-moving party's favor when sufficient competent evidence supports that party's version of the disputed facts. B*ut see Pace v. Capobianco*, 238 F.3d 1275, 1276–78 (11th Cir. 2002) (a court is not required to resolve disputes in the non-moving party's favor when that party's version of events is supported by insufficient evidence). However, "mere conclusions and

unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (citing *Bald Mountain Park, Ltd. v. Oliver*, 863 F.2d 1560, 1563 (11th Cir. 1989)). Moreover, "[a] mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that a jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 252).

## II.     FACTUAL BACKGROUND

Isom, who is African-American, worked for the Board as a District Supervisor. *See* doc. 27-1 at 2. Isom's duties included "maintaining work order, work order requests, working with customers, inspect[ing] . . . work done, calculat[ing] requirements for concrete and concrete requisition, measur[ing] work and enter[ing] measurements on drawing[s], reading and interpreting blue prints, [and] coordinat[ing] work with other departments, and inspectors." *Id.* Relevant here, the Board required Isom to submit time entries for himself and the employees he supervised, and issued Isom a company vehicle equipped with a NavMan GPS system to use for work. Doc. 20-7 at 2. During the summer of 2014, while examining Isom's GPS records, Keith Witt, Isom's temporary supervisor, discovered that Isom had recorded false time entries which showed Isom purportedly at work while Isom was actually in non-work locations. *Id.* at 2–3.

The review showed also that Isom used his company vehicle on days and times when he was not actually working. *See* doc. 20-4 at 2. Significantly, although the Board permitted supervisors to edit their timesheets, it required them to include a "comment" to explain any discrepancies. *See* doc. 20-7 at 2. Isom undisputedly did not include the required comments on his timesheets. *See* doc. 20-7 at 2, 4; *see generally* doc. 28-1 (not disputing this point). Moreover, during a meeting with Witt, Michael Arrington (Isom's direct supervisor), and Charlotte Harris (Human Resources), Isom was unable to explain the discrepancies. *Id.*

Based on Isom's time discrepancies, the Board conducted an audit of all of the supervisors' timekeeping records and discovered that several other supervisors also had "timekeeping discrepancies which required explanation." *Id.* at 2–3. Ultimately, after interviewing all supervisors with timekeeping discrepancies, the Board discharged only Isom.

### III.   ANALYSIS

The analysis is divided into two parts. In part A, the court will address Isom's claims of race discrimination, and, in part B, the claim for unpaid overtime compensation.

**A. Race Discrimination (Count I)**

Isom alleges that racial animus motivated his termination, because "he was held to a higher standard of employment than the similarly situated white

employees." Doc. 1 at 4.[1] Title VII and Section 1981 make it unlawful for an employer to "discharge any individual . . . because of such individual's race, color, religion, sex, or national origin . . . ." 42 U.S.C. § 2000e-2(a)(1); 42 U.S.C. § 1981. Where, as here, Isom is attempting to prove intentional discrimination through circumstantial evidence, the court utilizes the *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973), burden-shifting method of proof. Under this method, Isom bears the burden of establishing a *prima facie* case of race discrimination. *See Burke-Fowler v. Orange County, Fla.*, 447 F.3d 1319, 1323 (11th Cir. 2006) (citation omitted). If Isom satisfies his initial burden, "then [the Board] must show a legitimate, non-discriminatory reason for its employment action." *Id.* (citation omitted). "If it does so, then [Isom] must prove that the reason provided by [the Board] is a pretext for unlawful discrimination." *Id.* (citation omitted). However, "[t]he ultimate burden of persuading the trier of fact that [the Board] intentionally discriminated against [Isom] remains at all times with [Isom]." *Springer v. Convergys Customer Mgmt. Group, Inc.*, 509 F.3d 1344, 1347 (11th Cir. 2007) (citation omitted).

---

[1] Isom acknowledges, however, that the Board also failed to discharge "some other African-American [supervisors] [who] had time discrepancies." Doc. 27-1 at 5–6.

1. <u>Section 1981</u>

The Board, a municipal actor, seeks summary judgment on Isom's section 1981 claim based on Isom's failure to demonstrate a widespread policy or custom of discrimination.[2]  Doc. 20-1 at 9.  Isom counters that "[t]here was a long standing policy that district supervisors were allowed to manually enter time," and that "[a] pattern of overlooking alleged time sheet infractions by the white employees can give rise to a policy."  Doc. 28-1 at 9.  Isom further asserts that, "[g]iven the audit results, [the Board] cannot claim that it had no knowledge of these other alleged infractions and/or did not tacitly approve them.  Isom was the audit's only job loss."  *Id.* at 10.  Isom's contentions are unavailing, because disparate disciplinary treatment arising out of a single audit is not the type of widespread conduct needed to show a custom or policy of discrimination.  *See Oklahoma City v. Tuttle*, 471 U.S. 808, 823–24 (1985) ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell* [*v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978)], unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a

---

[2] A plaintiff bringing a section 1981 claim must show a custom or policy within the meaning of *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), because section 1981 can provide no broader remedy against a state actor than section 1983.  *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 735 (1989).  *See also Busby v. City of Orlando*, 931 F.2d 764, 771 n.6 (11th Cir. 1991) ("The section 1981 claim has been effectively merged into the section 1983 claim for racial discrimination.  This occurs because the express action at law provided by § 1983 for the 'deprivation of any rights, privileges, or immunities secured by the Constitution and laws,' provides the exclusive federal damages remedy for the violation of the rights guaranteed by § 1981 when the claim is pressed against a state actor.").

municipal policymaker."); *Craig v. Floyd Cty., Ga.*, 643 F.3d 1306, 1310–11 (11th Cir. 2011) ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability against a municipality," "even when the incident involves several employees of the municipality."). Therefore, in light of Isom's failure to show a widespread custom of disparate disciplinary treatment or to present any evidence of a municipal policy of discrimination, the Board's motion on the section 1981 claim is due to be granted.

    2. Title VII

To support his Title VII claim, Isom maintains that the Board's articulated reasons for discharging him — *i.e.*, "falsification of time records, using the [Interactive Voice Recorder] system and editing timesheet to clock in and out for work when not working," doc. 20-3 at 3, are pretextual because of the Board's failure to discharge Jerry Lowe and Larry Calhoun, who purportedly committed more egregious falsification and personal company car usage offenses. As Isom puts it, he was "far from the worst offender," doc. 28-1 at 7, because he only adjusted his payroll by $2,745.74, whereas Lowe and Calhoun adjusted their payroll sheets by $14,649.71 and $6,756.45, respectively, *see* doc. 20-10 at 8.

Where, as here, "a plaintiff seeks to show disparate treatment of comparators, those individuals must . . . be similarly situated." *Foster v. BioLife Plasma Servs., L.P.*, 566 F. App'x 808, 811 (11th Cir. 2014). *See also Silvera v.*

*Orange Cnty. Sch. Bd.*, 244 F.3d 1253, 1259 (11th Cir. 2001).  To ensure that the comparator is similarly situated to the plaintiff in "all relevant respects," *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1091 (11th Cir. 2004),  the court should inquire "whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways," *Burke-Fowler*, 447 F.3d at 1323. "When making that determination, we require that the quantity and *quality* of the comparator's misconduct be *nearly identical* to prevent courts from second-guessing employers' reasonable decisions."  *Burke-Fowler*, 447 F.3d at 1323 (emphasis added).

Here, Isom has failed to demonstrate that Lowe and Calhoun are similarly situated in all relevant respects.  While the audit showed also that these two individuals adjusted their payroll entries, there is no evidence, however, that they engaged in "nearly identical" conduct.  Among other things, Isom failed to address the Board's contention that he was not "terminated for simply editing his time entries, [and that] instead, [Isom] failed to follow the requirement to enter comments explaining edits to such time entries and had numerous instances where he recorded hours worked when he was not working." Doc. 31 at 2.[3] *See also* doc. 20-7 at 3 ("Mr. Isom's time entries contain none of the required explanations for

---

[3] Keith Witt emphasized in emails sent to supervisors (including Isom) in August 2014 that employees who edited their timesheets using the IVR system needed to "put in a comment" explaining the discrepancy.  *See* doc. 20-7 at 6–9.

manual time entries."). In contrast, Lowe and Calhoun "provided the needed explanations for any time discrepancies in their time records." Doc. 20-7 at 4. In other words, Lowe and Calhoun followed the proper procedures. Significantly, Isom does not dispute that, in contrast to Lowe and Calhoun, he did not explain his time discrepancies either by providing comments to accompany his timesheet edits or during his meeting with Witt, Arrington, and Harris. *See generally* doc. 28-1. Also, Isom does not present any evidence to show that Lowe and Calhoun stole time by fabricating their manual entries. Instead, Isom states only that the Board "believed their white supervisors['] explanation for any time issues" and that their "explanations are not provided." Doc. 28-1 at 2. Isom's contention is unavailing because, unlike Lowe and Calhoun, Isom presented no explanations in his time sheets for his manual time entries, and when confronted, apparently also failed to provide acceptable explanations, including for why he was home or at non-work sites when he claimed to be on the clock. As such, he cannot claim credibly that the Board treated him differently by not believing his explanation. Moreover, the Board, in fact, provided the explanations Lowe and Calhoun provided by attaching their relevant entries as exhibits to Keith Witt's affidavit. *See* doc. 20-7. These documents confirm the Board's contention that these individuals, unlike Isom, provided the necessary explanations in their timesheets. Finally, there is no evidence before the court to rebut the Board's contention that the Board had no

basis to find that Lowe and Calhoun failed to actually work the hours they represented in their timesheets. *See* doc. 20-7 at 4. By failing to present such evidence, Isom falls short of presenting "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." *Combs v. Plantation Patterns, Meadowcraft, Inc.*, 106 F.3d 1519, 1538 (11th Cir. 1997) (internal quotation marks omitted).

In light of Isom's failure to show that Lowe and Calhoun are similarly-situated comparators in all relevant respects, Isom cannot demonstrate pretext. Accordingly, the Board's motion is due to be granted as to Isom's Title VII claim.

### B. FLSA Claim (Count II)

Finally, Isom alleges that the Board violated the FLSA by failing to pay him overtime. According to Isom, he "routinely worked in excess of forty hours per week and was not compensated for any overtime," and the Board "would not pay Isom and other similarly situated persons for any over time until an employee worked over 50 hours per week." Doc. 1 at 3. The Board has moved for summary judgment, stating that its district supervisors fall within the executive exemption to the FLSA, *see* 29 U.S.C. § 213(a)(1), and that, "as a courtesy to Mr. Isom and the other supervisors, [the Board] paid them straight-time overtime for hours worked in a week in excess of 50," doc. 20-4 at 2.

Courts must "narrowly construe exemptions to the FLSA overtime requirement." *Morgan v. Family Dollar Stores*, 551 F.3d 1233, 1269 (11th Cir. 2008). Relevant here, the parties dispute whether the Board compensated Isom on a salary basis[4] and whether Isom's primary duties consisted of supervision and management. As Isom tells it, the Board paid him an hourly rate, only paid him for his absences if he had vacation or sick time, and "less than 50% of his time was spent in supervision." Doc. 27-1 at 2–3, 7, 15–16. Although the ultimate determination of whether an employee is "exempt" is a question of law, where, as here, there are material factual disputes regarding the factors set forth in 29 C.F.R. § 541.100(a), summary judgment is not appropriate. *See Icicle Seafoods, Inc. v. Worthington*, 475 U.S. 709, 714 (1986)) ("The question of how [a plaintiff spent his time working for the defendant] is a question of fact. The question whether their particular activities excluded them from the overtime benefits of the FLSA is a question of law.").

---

[4] Under the relevant regulations, the executive exemption requires that (1) the employer compensate the employee on a salary basis, (2) that the employee's primary duty be management, (3) that he customarily and regularly direct the work of two or more employees, and (4) has the authority to hire or discharge or that the employer give particular weight to his suggestions and recommendations. 29 C.F.R. § 541.100(a). "An employee [is] considered to be paid on a 'salary basis' . . . if the employee regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of the employee's compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed." 29 C.F.R. § 541.602(a).

## IV.   CONCLUSION AND ORDER

For the reasons stated above, the Board's motion for summary judgment, doc. 20, is **GRANTED** as to Isom's section 1981 and Title VII claims (Count I), and these claims are **DISMISSED WITH PREJUDICE.**  The motion is **DENIED** as to Isom's FLSA claim (Count II), which, consistent with the Scheduling Order, doc. 12, will proceed to a pretrial conference at 9:45 a.m. on August 22, 2017, and a jury trial at 9:00 a.m. on September 25, 2017, both in Courtroom 4A of the Hugo L. Black United States Courthouse in Birmingham, Alabama.  The court directs the parties to the Standard Pretrial Procedures governing all pretrial deadlines, which is attached as **Exhibit A**.

**DONE** the 13th day of July, 2017.

*[signature]*

**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE

## **EXHIBIT A**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA

PRE-TRIAL DOCKET
HON. ABDUL K. KALLON, PRESIDING

**BIRMINGHAM, ALABAMA**

This case is set for a pre-trial hearing pursuant to Rule 16 of the Federal Rules of Civil Procedure. A conference-type hearing will be held in chambers in the United States Courthouse in Birmingham, Alabama at the time indicated.

The hearing will address all matters provided in Rule 16, including the limitation of issues requiring trial, rulings on pleading motions, and settlement possibilities.

Counsel attending the conference are expected to be well-informed about the factual and legal issues of the case, and to have authority to enter appropriate stipulations and participate in settlement discussions. <u>Counsel appearing at the conference will be required to proceed at trial notwithstanding the naming of others as designated trial counsel</u>.

Promptly upon receipt of this notice, plaintiff's counsel is to initiate discussions with other counsel aimed at ascertaining which basic facts are not in dispute, at clarifying the parties' contentions (for example, just what is denied under a "general denial") and at negotiating workable procedures and deadlines for remaining discovery matters. <u>At least four (4) business days in advance of the conference, plaintiff's counsel is to submit to chambers (via email at kallon_chambers@alnd.uscourts.gov) a proposed Pre-trial Order inWordPerfect format</u>, furnishing other counsel with a copy. It is anticipated that in most cases the proposed order, with only minor insertions and changes, could be adopted by the court and signed at the close of the hearing.

A sample of a proposed Pre-trial Order is available on the Chamber web site (http://www.alnd.uscourts.gov/content/judge-abdul-k-kallon) to illustrate the format preferred by the court and also to provide additional guidance and instructions. Each order must, of course, be tailored to fit the circumstances of the individual case.

      Counsel drafting this proposed order should consider the utility this document will provide for the litigants, the jury, and the court alike. The court anticipates using the pretrial order to (1) identify and narrow the legal and factual issues remaining for trial, and (2) provide jurors with the legal and factual context of the dispute. This order should **not** revisit at length arguments made in previous filings with the court, nor should it serve as another venue for adversarial posturing. Pretrial orders should be simple, short, and informative.

      IN ANY CASE WHERE COUNSEL HAVE ANNOUNCED SETTLEMENT TO THE COURT, A CONSENT JUDGMENT IN SATISFACTORY FORM <u>MUST</u> BE PRESENTED TO THE COURT <u>PRIOR</u> TO THE SCHEDULED TRIAL DATE; OTHERWISE, THE CASE WILL BE DISMISSED<u>WITH</u> PREJUDICE.